J. R. WHALEY (La. Bar Roll Number 25930)
WHALEY LAW FIRM
6700 Jefferson Highway
Building 12, Suite A
Baton Rouge, LA 70806
T: (225) 302-8810
F: (225) 302-8814
jrwhaley@whaleylaw.com


William D. Marler (*pro hac vice* to be filed)
MARLER CLARK, LLP, PS
1012 First Avenue, Suite 500
Seattle, WA 98104
T: 206-346-1888
F: 206-346-1898
bmarler@marlerclark.com

ATTORNEYS FOR PLAINTIFF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RUTH BRAUD and BRANDON BRAUD, individually and on behalf of their minor child, A.B., | CIVIL DIVISION<br><br>CASE NO.: |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| GREAT ESCAPES PELAHATCHIE, LP d/b/a JELLYSTONE PARK YOGI ON THE LAKE PELAHATCHIE, a foreign limited partnership, | |
| Defendant. | |

## PLAINTIFFS' CIVIL ACTION COMPLAINT

AND NOW, come Plaintiffs Ruth Braud and Brandon Braud, individually and on behalf

of their minor child, A.B., who, by and through their counsel of record, J. R. Whaley of Whaley

Law Firm, and William D. Marler of Marler Clark, LLP PS (pending admission *pro hac vice*),

alleges upon information and belief as follows:

## PARTIES

1.    Plaintiffs reside and are domiciled in Prairieville, Ascension Parish, Louisiana.

Therefore, Plaintiffs are citizens of the State of Louisiana

2.    Defendant Great Escapes Pelahatchie, LP, is a limited partnership organized and

existing under the laws of the State of Mississippi. Upon belief, the partnership has one general

partner, Great Escapes Pelahatchie Management, LLC (GEPM), a limited liability company

organized and existing under the laws of the State of Mississippi, with its principal place of

business at 2539 S. Gessner Road, Ste. 13, Houston, Texas 77063. Upon belief, GEPM's sole

manager is Ricky L. Jenkins, who is a resident of Texas. Therefore, Defendant is a citizen of the

States of Mississippi and Texas. In its ordinary course of its business, and at all times relevant to

this action, Defendant owned and operated Jellystone Park Yogi on the Lake Pelahatchie, including

all of its recreational water facilities and pools.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is

between citizens of different states, and because the Defendant has certain minimum contacts with

the State of Louisiana such that maintenance of the suit in this district does not offend traditional

notions of fair play and substantial justice.

4.      Venue in the United States District Court for the Middle District of Louisiana is proper pursuant to 28 U.S.C. § 1391(b)(3) because the Defendant is subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## GENERAL ALLEGATIONS

**The 2021 *E. coli* O157 Outbreak at Jellystone Camp Park and Resort**

5.      The Mississippi State Department of Health (MSDH) has identified several cases of *E. coli* infections associated with use of the swimming pool and splashpad at Yogi on the Lake in Pelahatchie, Mississippi.

6.      The cases identified so far have exposure dates on the weekend of July 30 through August 1, 2021. Additional exposures may have occurred through August 9, 2021.

7.      MSDH calls this "an evolving situation" and they are conducting an ongoing investigation to identify any additional cases. Health officials say that those who were swimming in the pool or splashpad at Yogi on the Lake in Pelahatchie between July 30 and August 9, 2021 should monitor for symptoms of stomach cramps, diarrhea, vomiting, and fever.

***E. coli* O157 Infection and Hemolytic Uremic Syndrome**

8.      *Escherichia coli* are the name of a common family of bacteria, most members of which do not cause human disease.  *E. coli* O157 is a specific member of this family that can cause bloody diarrhea (hemorrhagic colitis) in humans.  In the years since *E. coli* O157:H7 was first identified as a cause of diarrhea, this bacterium has established a reputation as a significant public health hazard.

9.      *E. coli* O157 lives in the intestines of cattle and other ruminants.  *E. coli* O157 is also notable among pathogenic bacteria for its extremely low infectious dose—that is, the number of bacteria necessary to induce infection in a person.  While for most pathogenic bacteria it takes

literally millions of bacterial colonies to cause illness, it is now known that fewer than 50 *E. coli* O157 bacteria can cause illness in a child. The practical import is that even a microscopic amount of exposure can trigger a devastating infection.

10.    The most severe cases of the *E. coli* O157 infection occur in young children and in the elderly, presumably because the immune systems in those age populations are the most vulnerable. After a susceptible individual ingests *E. coli* O157, the bacteria attach to the inside surface of the large intestine and initiates an inflammatory reaction of the intestine. What ultimately results in the painful bloody diarrhea and abdominal cramps characteristic of the intestinal illness.

11.    The mean incubation period (time from ingestion to the onset of symptoms) of *E. coli* O157 is estimated to be two to four days (range, 1-21 days). Typically, a patient with an acute *E. coli* O157 infection presents with abdominal cramps, bloody diarrhea, and vomiting. The duration of diarrhea in children with *E. coli* O157 infections are significantly longer than that of adults.

12.    *E. coli* O157 can produce a wide spectrum of disease from mild, non-bloody diarrhea, to severe bloody diarrhea accompanied by excruciating abdominal pain to life-threatening complications. In most infected individuals, the intestinal illness lasts about a week and resolves without any long-term effects. Antibiotics do not appear to aid in combating these infections, and recent medical studies suggest that antibiotics are contraindicated for their risk of provoking more serious complications. Apart from good supportive care, which should include close attention to hydration and nutrition, there is no specific therapy.

13.    About 10% of individuals with *E. coli* O157 infections (mostly young children) go on to develop hemolytic uremic syndrome (HUS), a severe, potentially life-threatening

complication.  The essence of the syndrome is described by its three central features:  destruction of red blood cells, destruction of platelets (those blood cells responsible for clotting), and acute renal failure due to the formation of micro-thrombi that occlude microscopic blood vessels that make up the filtering units within the kidneys.

14.     There is no known therapy to halt the progression of HUS.  The active stage of the disease usually lasts one to two weeks, during which a variety of complications are possible.  HUS is a frightening illness that even in the best American medical facilities has a mortality rate of about 5%.  The majority of HUS patients require transfusion of blood products and develop complications common to the critically ill.

**Plaintiff A.B.'s Injuries**

15.      A.B. and her family went to Jellystone Park in Pelahatchie, Mississippi, from July 29 through August 1, 2021.

16.     A.B. swam in the pool and used the splash pad on those dates.

17.     On August 2, 2021, A.B. developed a fever, which lasted for two days, and then developed diarrhea. A.B.'s parents saw blood in her stool and they immediately sought medical care.

18.     A stool sample taken from A.B. tested positive for *E. coli* O157.

19.     A.B. continues to recover from her illness.

## CAUSES OF ACTION

### NEGLIGENCE / PREMISES LIABILITY

20.     Plaintiffs hereby incorporate paragraphs 1 through 19 by this reference as if each paragraph was set forth in its entirety.

21.    A. B. and her family were at all times invitees of Defendants and conducting themselves as was expected and encouraged by Defendants, including use of Defendant's facilities, water facility and pool(s) located thereon.

22.    Defendant owned and operated Jellystone Park, located at 143 Campground Rd., Pelahatchie, MS 39145, at all times relevant, including controlling and operating every aspect of the recreational water facility and pool(s) located thereon. Thus, the property causing damage was in the custody of Defendant.

23.    *E. coli* O157 is a harmful, potentially lethal pathogen when ingested by humans. Therefore, levels of *E. coli* O157 in the pool water high enough to allow for bacterial transmission of *E. coli* O157 via pool water at Jellystone Park was a condition on the property that created an unreasonable risk of harm to persons, including Plaintiff A.B., on the premises.

24.    Defendant had a duty to discover any unreasonably dangerous conditions existing on its land and to correct or warn of such conditions regarding the equipment, personnel, and premises at Jellystone Park.

25.    Bacterial transmission of disease, including the transmission of *E. coli* through pool water, is a well-known danger in the industry of recreational water facilities. Through appropriate monitoring of its facilities' water quality, Defendant knew or should have known that the chlorine concentration of its pool water was insufficient to effectively neutralize *E. coli* O157 bacteria in the water such that it did not pose a risk to pool patrons, including Plaintiff A.B.

26.    Defendant unreasonably failed to exercise reasonable care to protect pool patrons, including A.B., from the known danger of *E. coli* transmission via its pool water in the following ways:

       a.    Failure to properly train its aquatic facility employees, seasonal and permanent, on proper pool operation and maintenance, including chemical monitoring, usage,

recording, maintenance, and fecal accident response procedures in compliance with the applicable regulations;

    b.    Failure to maintain adequate records and documentation including, but not limited to, daily pool logs, ORP logs, water chemistry logs, temperature logs, test results of regular bacteriological water analysis from an independent laboratory, chemical use logs, controller print-outs, routine and preventative maintenance logs, and/or clean-up procedures, which industry standards dictate be maintained in the ordinary course of business;

    c.    Failure to use appropriate systems for cleaning, maintaining, operating, monitoring, and inspecting its pools and their related filtration, circulation, and piping system components; and

    d.    Failure to design and/or construct its aquatic facility's pools to ensure proper water circulation, filtration and input/output, and other standards outlined in the applicable regulations.

27.    The measures delineated above, had they been properly implemented, could have prevented injury to pool patrons, including Plaintiff A.B.

28.    Defendant's unreasonable failure to exercise reasonable care in the ways delineated above, among others, caused the recreational water in its pools to become contaminated by *E. coli* O157 on at least July 30 through August 1, 2021, and also allowed the contamination to persist, creating the risk of severe health consequences to patrons.

29.    A.B.'s *E. coli* O157 infections, injuries, and damages were directly and proximately caused by bacterial transmission via Defendant's facility's pool water. Therefore, Defendant is strictly liable to Plaintiffs for A.B.'s injuries.

## DAMAGES

30.    Plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the Defendant, in an amount which shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; past medical and medical-related expenses; future medical and medical-related expenses; travel and

travel-related expenses, both past and future; lost wages; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs prays for judgment against the Defendant as follows:

a. Compensation for all general, special, incidental, and consequential damages suffered by the Plaintiffs as a result of the Defendant's conduct;

b. Statutory prejudgment interest;

c. Reasonable attorneys' fees and costs, to the fullest extent allow by law; and

d. All such additional and further relief as this Court deems just and equitable.

## JURY DEMAND

A jury is demanded for the trial of this action.

DATED: August 17, 2021

Respectfully submitted,

/s/ J. R. Whaley

_____

J. R. WHALEY (La. Bar Roll Number 25930)
WHALEY LAW FIRM
6700 Jefferson Highway
Building 12, Suite A
Baton Rouge, LA 70806
T: (225) 302-8810
F: (225) 302-8814
jrwhaley@whaleylaw.com

William D. Marler (pending admission *pro hac vice*)
MARLER CLARK, LLP, PS
1012 First Avenue, Suite 500
Seattle, WA 98104
T: 206-346-1888
F: 206-346-1898
bmarler@marlerclark.com

ATTORNEYS FOR PLAINTIFF